IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Mikel Christian, | ) | C/A No.  0:15-3379-DCN-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| John Magill, *Director, S.C.D.M.H.*; Holly | ) | |
| Scaturo, *Director, S.V.P.T.P.*; Kimberly | ) | |
| Poholchuk, *Program Coor., S.V.P.T.P.*; | ) | |
| Warden Stevenson, *Warden, B.R.C.I., all in* | ) | |
| *their individual and official capacities*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Mikel Christian, a self-represented litigant committed to the custody of the South

Carolina Department of Mental Health, filed this action against the named defendants pursuant to

42 U.S.C. § 1983.  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil

Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motions for

summary judgment.  (ECF Nos. 37 & 40.)  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975), the court advised Christian of the summary judgment and dismissal procedures and the

possible consequences if he failed to respond adequately to the defendants' motions.  (ECF Nos. 38

& 42.)  Christian filed a response in opposition to the defendants' motions.  (ECF No. 44.)  The

defendants filed replies.  (ECF Nos. 45 & 46.)  Having reviewed the parties' submissions and the

applicable law, the court finds that the defendants' motions should be granted.

## BACKGROUND

Christian is civilly committed as a resident of the Sexually Violent Predator Treatment Program ("SVPTP") at the South Carolina Department of Mental Health in Columbia, South Carolina, which provides for the control, care, and treatment of individuals found to be sexually violent predators pursuant to the South Carolina Sexually Violent Predator Act.  S.C. Code Ann. §§ 44-48-10 to -170.  Christian's Amended Complaint asserts claims pursuant to 42 U.S.C. § 1983 alleging unconstitutional conditions of confinement, that the defendants have been deliberately indifferent to his health and/or safety, and that the defendants have violated his rights to due process and equal protection.[1]  Christian seeks injunctive relief and monetary damages.  (See generally Am. Compl., ECF No. 19.)

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[1] To the extent Christian asserts additional claims in his Amended Complaint, the court previously found that Christian provided no factual allegations to support such claims under the referenced constitutional provisions.  (See Order filed Sept. 3, 2015, ECF No. 9 at 1 n.2.)



In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Defendants' Motion for Summary Judgment**

### 1.    Defendants Magill and Stevenson

Christian appears to raise his claims against these defendants in their supervisory capacities as warden and director. The defendants argue that, accordingly, any claims against these defendants should be dismissed as Christian has failed to allege that they had any personal involvement in the alleged deprivation of Christian's constitutional rights.



The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his or her individual capacity.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).  Moreover, a claim based upon the doctrine of *respondeat superior* does not give rise to a § 1983 claim.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978).  "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.  As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer."  Id. at 677.  Indeed, the dissent in Iqbal opined that, "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely."  Id. at 693 (Souter, J., dissenting).

While Fourth Circuit precedent recognizes that supervisory officials may be held liable in some circumstances for constitutional injuries directly inflicted by their subordinates, Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), certain criteria must be demonstrated to trigger such liability.  A plaintiff must show that the supervisory official (1) was actually or constructively aware of a risk of constitutional injury, (2) was deliberately indifferent to that risk, and (3) that an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999).  Although Christian generally alleges that the defendants "have created and or implemented the policies and procedures that have allowed the plaintiff[']s constitutional rights to be violated," he has failed to point to any specific policy or procedure that allegedly violated his constitutional rights.  (Am. Compl., ECF No. 19 at 7.)  Additionally, Christian's general allegations against these defendants,



to the extent he even mentions them, are insufficient to establish that these defendants had knowledge of any purported constitutional violation. See Shaw, 13 F.3d at 799. Review of Christian's filings provides no insight into how these defendants would even have knowledge of the violations alleged in his Amended Complaint, as Christian does not indicate that he made any attempt to inform the defendants about the alleged violations. (See generally Am. Compl., ECF No. 19.) Accordingly, any claims alleged against these defendants in their supervisory capacities should be dismissed.

### 2.     Fourteenth Amendment Claims

The only allegations Christian makes specifically as to the remaining defendants are as follows: (1) he has been searched numerous times by Defendant Poholchuk, and she also searched his cell on one occasion and took his paperwork but later returned it; (2) Defendant Scaturo subjected him to double-bunking with another sexually violent predator which he claims put his life at risk; (3) Defendant Poholchuk limited or prevented him access to electric razors, computers, and personal property such as speakers and televisions; and (2) inmates have tampered with his food and numerous foreign objects and even human fluids and excrement have been in his food and beverages, issues which Scaturo and Poholchuk have done nothing to fix.

### a.     Due Process

"Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Christian is civilly committed as a resident of the SVPTP rather than incarcerated as a result of a criminal conviction. Therefore, the court does not examine his claim under the



Eighth Amendment's proscription against cruel and unusual punishment, but rather under the Fourteenth Amendment's requirement of due process. See Youngberg, 457 U.S. at 325 (determining that the Fourteenth Amendment was the appropriate source of constitutional rights for an individual involuntarily committed in a state institution).

"In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society.' " Id. at 320 (quoting Poe v. Ullman, 367 U.S. 497, 542 (1961) (Harlan, J., dissenting)). The Youngberg Court explained that "the decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a *substantial departure* from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323 (citations omitted) (emphasis added). Moreover, the United States Court of Appeals for the Fourth Circuit has stated that "liability under the due process clause cannot be imposed for mere negligence, a principle reflected in the professional judgment standard's requirement of a substantial departure from accepted professional judgment." Patten v. Nichols, 274 F.3d 829, 842 (4th Cir. 2001).

In support of their motion for summary judgment, the defendants have provided affidavit testimony from Defendant Holly Scaturo, the director of the SVPTP, and Defendant Kimberly Poholchuk, the program coordinator of the SVPTP. Poholchuk testifies that all rooms occupied by residents of the SVPTP are subject to random searches and inspection for dangerous and unauthorized materials. (Poholchuk Aff. ¶ 3, ECF No. 40-5 at 2.) She further avers that her participation in any search of Christian's room was "to ensure that [he] was not in possession of any contraband or other items" that may compromise the safety of the SVPTP, and that "all searches of

[Christian's] room were conducted in the same manner" as all other searches on the SVPTP unit. (Id. ¶ 5.) Scaturo avers that, pursuant to South Carolina Department of Mental Health policy, ideally residents are assigned to single-occupancy rooms; however, "because the SVPTP has no control over the number of residents referred for treatment, double-bunking sometimes becomes necessary." (Scaturo Aff. ¶ 12, ECF No. 40-7 at 3.) Scaturo further avers that decisions regarding double-bunking are made by staff with "the best medical, treatment, and safety interests of residents in mind as well as made through the exercise of professional judgment," and further notes that "[f]rom January 5, 2015 to present [Christian] has not been double bunked as a resident of the SVPTP." (Id. ¶¶ 12-13.) Scaturo avers that, even when double-bunking is required, the SVPTP is "not overcrowded in the sense that the number of residents exceeds our capacity to provide security, shelter, food, medical treatment or supplies, and other necessary services" to the SVPTP residents. (Id. ¶ 14, ECF No. 40-7 at 4.)

In addressing Christian's allegations regarding personal property, Scaturo avers that residents in the SVPTP are not permitted to possess electric razors due to safety concerns, but that residents may check them out from staff three times a week. (Id. ¶ 17.) She further avers that, as a "green level" resident, Christian is not permitted to purchase a television for his room, but that televisions are provided in the milieu of each wing to the SVPTP. (Id. ¶ 18.) Poholchuk testifies that all residents have access to Westlaw on the computers but must submit a form to gain access. (Poholchuk Aff. ¶ 7, ECF No. 40-5 at 2.) Scaturo swears that "[t]he limitations imposed upon the residents of the SVPTP apply to all residents of the SVPTP without exception." (Scaturo Aff. ¶ 19, ECF No. 40-7 at 5.)

PJG

Poholchuk also testifies that meals are provided to SVPTP residents through the Broad River Correctional Institution, and that residents are served the same food as is served to inmates. (Poholchuk Aff. ¶ 8, ECF No. 40-5 at 2.) She further avers that, "in the event that a resident finds contaminated food, they are to report it immediately to the SVPTP staff and a new tray will be substituted. In addition, residents are asked to report the contaminated food in writing on a Request to Staff form for the matter to be investigated." (Id. ¶ 8, ECF No. 40-5 at 2-3.) Poholchuk swears that she is not aware of Christian's ever receiving food containing razor blades or glass, nor is she aware of any food being served containing urine or feces. (Id. ¶ 9, ECF No. 40-5 at 3.)

Christian has failed to provide evidence from which a reasonable jury could find that his constitutional rights were violated and that the defendants did not meet the Youngberg professional judgment standard with regard to any of these allegations. The defendants' testimony demonstrates that the restrictions on Christian's ability to possess certain property, searches of his room, and his previous double-bunking status bear a reasonable relation to the defendants' interest in maintaining security and safety and do not appear to be punitive. Additionally, there is no evidence in the record that Christian notified the SVPTP staff of any food issues by filling out a request to staff. Accordingly, the defendants are entitled to summary judgment on these claims.

### b.     Equal Protection

A plaintiff alleging a violation of the Equal Protection Clause of the Fourteenth Amendment "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Once that is established, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of



scrutiny." Id.  When the distinction is based on a "suspect classification" or impinges upon the exercise of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is "precisely tailored to serve a compelling governmental interest." See Plyler v. Doe, 457 U.S. 202, 216-17 (1982).  "When a plaintiff is not a member of a suspect class he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." Treece v. S.C. Dep't of Mental Health, Civil Action No. 3:08-3909-DCN-JRM, 2010 WL 3781726,  at *10 (D.S.C. Feb. 19, 2010) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)) (report and recommendation adopted by 2010 WL 3781695 (D.S.C. Sept. 21, 2010)).

　　　　Christian fails to establish an equal protection claim.  Initially, he has not alleged that he is a member of a suspect class, although he generally alleges "discrimination" within the SVPTP when noting that only "4 or 5" out of forty-eight residents released since his arrival have been black.  (Am. Compl, ECF No. 19 at 4.)  Even assuming that Christian is African-American, he has failed to allege any specific acts or omissions on the part of the defendants sufficient to state a claim of unlawful racial discrimination. Additionally, Christian has failed to show that he was treated differently than any similarly situated SVPTP resident.  The defendants have provided affidavit testimony swearing that the rules and limitations about which Christian complains apply equally to all residents of the SVPTP.  (Poholchuk Aff. ¶ 15, ECF No. 40-5 at 3; Scaturo Aff. ¶ 19, ECF No. 40-7 at 5.) Moreover, even if there was evidence of disparate treatment, Christian has offered no evidence tending to show that it was the "result of intentional or purposeful discrimination." Morrison, 239 F.3d at 654.  Accordingly, the defendants are entitled to summary judgment on Christian's equal protection claims.

### 3. Other Claims

To the extent Christian is attempting to assert any other claims not specifically addressed above, his Complaint fails to state a plausible claim for relief. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 667-68 (2009). Additionally, any claims alleged by Christian that fail to specifically allege personal participation by a named defendant also should be dismissed. <u>Iqbal</u>, 556 U.S. at 676.

### RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motions for summary judgment be granted. (ECF Nos. 37 & 40.)

_____

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 8, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).