**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | |
|---|---|
| MIKEL CHRISTIAN,               ) | |
|                                ) | |
|           Plaintiff,          ) | |
|                                ) | Civil No. 0:15-cv-03379-DCN |
|       vs.                        ) | |
|                                ) | **ORDER** |
| JOHN MAGILL, *S.C.D.M.H. in his individual* ) | |
| *and official capacity*, HOLLY SCATURO, ) | |
| *Director S.V.P.T.P. in her individual and* ) | |
| *official capacity*, KIMBERLY POHOLCHUK, ) | |
| *Program Coordinator S.V.P.T.P, in her* ) | |
| *individual and official capacity*, WARDEN ) | |
| STEVENSON, *Warden BRCI in his individual* ) | |
| *and official capacity*,                  ) | |
|                                ) | |
|           Defendants.        ) | |
| _____) | |

      This matter is before the court on Magistrate Judge Paige J. Gossett's Report

and Recommendation ("R&R"), ECF No. 48, that the court grant defendant Warden

Stevenson's ("Stevenson") motion for summary judgment, ECF No. 37, and

defendants John Magill ("Magill"), Kimberly Poholchuk ("Poholchuk"), and Holly

Scaturo's ("Sacturo," together with Magill and Poholchuk, the "SCDMH

defendants") separate motion for summary judgment, ECF No. 40.  For the reasons

set forth below, the court adopts in part and rejects in part the R&R, and grants in part

and denies in part defendants' motions for summary judgment.

## I.  BACKGROUND

      Plaintiff Mikel Christian ("plaintiff") is involuntarily committed to the

Sexually Violent Predator Treatment Program ("SVPTP") pursuant to the South

Carolina Sexually Violent Predator Act.  See S.C. Code Ann. § 44-48-10.  Though

the SVPTP is administered through the South Carolina Department of Mental Health ("SCDMH"), individuals committed to the SVPTP are housed at the Broad River Correctional Institution ("BRCI"), a facility run by the South Carolina Department of Corrections ("SCDC").  ECF No. 37-3, Stevenson Aff. ¶ 5.

Plaintiff filed this pro se action pursuant to 42 U.S.C. § 1983 on August 25, 2015, alleging numerous violations of his constitutional rights in connection with his living conditions, SVPTP food services, SCDMH disciplinary policies, and other aspects of his confinement at BRCI.  Plaintiff requests declaratory, injunctive, and monetary relief.

On February 29, 2016, Stevenson filed a motion for summary judgment.  On March 10, 2016, the SCDMH defendants filed a separate motion for summary judgment.  Plaintiff responded to both motions on March 21, 2016.  Stevenson and the SCDMH defendants filed separate replies on March 31, 2016.  On July 8, 2016, the magistrate judge issued the R&R, recommending the court grant defendants' motions for summary judgment.  Plaintiff filed objections to the R&R on July 26, 2016.  Stevenson filed a reply on July 29, 2016, and the SCDMH defendants filed a separate reply on August 12, 2016.

## II.  STANDARD

### A.      De Novo Review

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. 636(b)(1).  The court may adopt the portions of the R&R to which the petitioner did not object, as a party's failure to object is accepted as agreement with the conclusions

2

of the magistrate judge.  <u>Thomas v. Arn</u>, 474 U.S. 140, 149–50 (1985).  The recommendation of the magistrate judge carries no presumptive weight, and it is this court's responsibility to make a final determination.  <u>Mathews v. Weber</u>, 423 U.S. 261, 270–71 (1976).

### B.    Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>  At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor.  <u>Id.</u> at 255.

### C.    <u>Pro Se</u> Plaintiff

Plaintiff is proceeding <u>pro se</u> in this case.  Federal district courts are charged with liberally construing complaints filed by <u>pro se</u> litigants to allow the development of a potentially meritorious case.  <u>See</u> <u>Hughes v. Rowe</u>, 449 U.S. 5, 9–10 (1980).  <u>Pro se</u> complaints are therefore held to a less stringent standard than those drafted by attorneys.  <u>Id.</u>  Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim.  <u>See</u> <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387, 390–91 (4th Cir. 1990).

### III.   DISCUSSION

As noted above, plaintiff's constitutional claims traverse a number of issues related to his confinement.  The magistrate judge analyzed the bulk of these claims under the Due Process Clause of the Fourteenth Amendment, finding no evidence that the challenged policies and procedures fell outside the acceptable range of professional judgment states are afforded under that clause.[1]  R&R at 5–8.  Plaintiff objected to these findings by detailing certain restrictions and conditions imposed by the challenged policies and procedures, and providing two declarations in support of his contentions.  ECF No. 50, Pl.'s Objections.

An involuntarily committed person's conditions of confinement are subject to the standards set forth in <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982).  In <u>Youngberg</u>, the Supreme Court recognized that "determining whether a substantive right protected by the Due Process Clause has been violated" requires courts "to balance 'the liberty of the individual' and 'the demands of an organized society.'"  <u>Id.</u> at 320 (quoting <u>Poe v. Ullman</u>, 367 U.S. 497, 562 (1961) (Harlan, J., dissenting)).  In striking this balance, courts weigh "the individual's interest in liberty against the State's asserted reasons for restraining individual liberty."  <u>Id.</u>  "[D]ue process requires that the conditions and duration of confinement [for civil detainees] bear some reasonable relation to the purpose for which persons are committed."  <u>Seling v. Young</u>, 531 U.S. 250, 252 (2001).

---

[1] The magistrate judge also concluded that plaintiff failed to allege, or provide evidence of, a viable equal protection claim.  Plaintiff's objections to the R&R do not specifically address this finding.  In the absence of a specific objection, and seeing no clear error, the court adopts the R&R as to plaintiff's equal protection claim.

Because SVPTP detainees are not committed for purposes of punishment, SVPTP detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg, 457 U.S. at 321–22; see also English v. Johns, 2014 WL 555661, at *6 (E.D.N.C. Feb. 11, 2014) ("The Fifth Amendment generally prohibits the federal government from subjecting civilly committed persons to punitive confinement conditions."), aff'd, 582 F. App'x 229 (4th Cir. 2014), cert. denied, 135 S. Ct. 1564 (2015). However, the state is not required to show that the restrictions and conditions it imposes on civil detainees are justified by "substantial" or "compelling" necessity. Youngberg, 457 U.S. at 322. "To state a claim that conditions of confinement violate constitutional requirements, 'a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Haggwood v. Magill, No. 5:15-cv-3271, 2016 WL 4149986, at *2 (D.S.C. Aug. 3, 2016) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)).

Courts are quite clearly not experts in the administration of civil commitment programs, such as the SVPTP, or detention facilities, such as the BRCI. Id. at 322–23. For this reason, courts must be careful not to encroach on, or unnecessarily restrict, state agencies' exercise of their professional judgment in administering, designing, and maintaining such programs and facilities. Id. Instead, the court's role is to ensure that such professional judgment was, in fact, exercised. Id. A decision pertaining to a civil detainee's conditions of confinement, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the

professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323.

As the R&R explains, defendants have provided affidavit testimony addressing a number of the issues identified in plaintiff's amended complaint. R&R at 6–8. The R&R specifically cited evidence explaining the SCDC and SVPTP policies relevant to (1) searches of SVPTP detainees' rooms, (2) double-bunking of SVPTP detainees, (3) SVPTP's use of personal property, and (4) the safety of the meals served to SVPTP detainees. Id.; see also Stevenson Aff. ¶¶ 9–12 (explaining food safety procedures and cleaning and maintenance procedures); ECF No. 40-2, Helff Aff. ¶¶ 3, 4 (outlining enforcement of disciplinary policies among SVPTP committees); ECF No. 40-5, Poholchuk Aff. ¶¶ 2, 3, 7, 10–13 (explaining policies and procedures relating to searches of SVPTP committees' rooms, SVPTP committees' access to legal materials, and food safety): ECF No. 40-7, Scaturo Aff. ¶¶ 10–12 (explaining policies relating to double bunking of SVPTP committees). Though plaintiff's objections and supporting declarations[2] reiterate the restrictions

_____

[2] Plaintiff's objections were submitted alongside two sworn declarations which assert a number of facts that appear to relate to claims that were raised in his amended complaint, but ignored in his objections. First, the court notes that it need not consider such declarations at all, as they were submitted after the R&R was issued. Doe v. Chao, 306 F.3d 170, 183 (4th Cir. 2002), aff'd, 540 U.S. 614 (2004); Caldwell v. Jackson, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) ("While the court may receive further evidence, attempts to introduce new evidence after the magistrate judge has acted are disfavored."). Plaintiff has not offered any explanation for why this evidence was not offered earlier. This alone is grounds for disregarding the declarations in their entirety.

More importantly, as the magistrate judge explained in the Notice of Right to File Objections, a plaintiff must specifically identify the basis of any objections. R&R at 11. While plaintiff's actual objections lay out some argument, the supporting

and conditions imposed by these policies, plaintiff makes little, if any, attempt to show how most of these restrictions and conditions represent a "substantial departure" from the accepted range of professional judgment permitted under Youngberg, 457 U.S. at 323.

Plaintiff certainly has not presented any evidence of how his conditions of confinement compare to conditions imposed by other professionals in the area of prison administration or commitment-based treatment programs.  This omission seems forgivable enough, as plaintiff—like the court—likely has little direct knowledge of what constitutes a reasonable exercise of professional judgment in this area of expertise.  However, to the extent plaintiff endeavors to show that the conditions of his confinement, in and of themselves, are extreme enough to create a reasonable inference that defendants failed to exercise reasonable professional judgment, the court finds his argument largely unpersuasive.

Plaintiff mentions five specific issues in his objections:  (1) the disparity in personal property privileges between SVPTP detainees and prisoners at the BRCI, (2) the use of double-bunking, (3) poor sanitation in the BRCI facilities, (4) repeated incidents of food contamination, and (5) the fact that SVPTP policies allow him to be punished for behavioral violations before a hearing.  Pl.'s Objections 1–3.  The first three of these objections are easily disposed of on the current record.  The final two objections, however, require further analysis.

_____

declarations simply assert facts without any explanation of how those facts undermine the R&R.  See ECF No. 50-1, Christian Dec.; ECF No. 50-2, Ridley Dec.  To the extent these declarations set forth facts unconnected to the arguments outlined in plaintiff's objections, the court declines to consider or address them.

Nevertheless, the court will exercise its discretion to consider those portions of the declarations that actually relate to plaintiff's objections.

A.    **Personal Property**

Plaintiff first contends that he is not allowed to have a television[3] and cannot purchase the same amount of items at the BRCI canteen as a regular inmate at the BRCI. Pl.'s Objections 2. Courts have repeatedly upheld the SVPTP policy limiting ownership of personal televisions to "blue level" detainees. See Miller v. Scaturo, No. 8:15-cv-2707, 2016 WL 3951668, at *5 (D.S.C. June 30, 2016) ("Plaintiff has failed to establish that not being allowed to purchase a television violated his constitutional rights."), report and recommendation adopted, 2016 WL 3941074 (D.S.C. July 21, 2016); Treece v. S.C. Dep't of Mental Health, No. 3:08-cv-3909-DCN, 2010 WL 3781726, at *9 (D.S.C. Feb. 19, 2010) ("The restrictions on Plaintiff's ability to possess property bear a reasonable relation to Defendants' interest in maintaining security and safety and do not appear to be punitive."), report and recommendation adopted sub nom. 2010 WL 3781695 (D.S.C. Sept. 21, 2010). Limitations on plaintiff's spending limit at the BRCI canteen appear similarly reasonable. As Scaturo explained in her affidavit,

> due to the fact that the General Assembly determined residents of SVPTP are dangerous, the residents of the SVPTP are subject to be searched, supervised visits, limited personal items, monitored telephone calls and other living restrictions. These limitations imposed upon the residents of the SVPTP are necessary to maintain safety and order within the facility.

---

[3] Plaintiff's objection does not specifically identify the television policy, but simply states that plaintiff "cannot have the same items that a prisoner can even though he is on a prison yard." Pl.'s Objections 2. However, the court believes plaintiff intends to reference the television policy because this language parallels his previous allegation that he "can not even have a T.V. that even prisoners are allowed to have, yet [he] shop[s] at the same canteen as prisoners do and [is] on the same yard as prisoners." Am. Compl. ¶ 12.

Scaturo Aff. ¶ 7 (emphasis added).  Though Scaturo does not specifically address the canteen spending limit, it is apparent that this limitation bears some reasonable relation the administrative goals of the SVPTP.  Thus, the court finds that the restrictions on plaintiff's ownership and use of personal property do not amount to a constitutional violation.

### B.     Double-Bunking

The evidence is also clear that SVPTP policies are reasonably designed to tailor double bunking assignments to the administrative needs of the SVPTP.  ECF No. 40-9, Scaturo Aff., Ex. B, SCDMH Double Bunking Policy.  The court first observes that there is no "'one man, one cell' principle lurking in the Due Process Clause."  Bell v. Wolfish, 441 U.S. 520, 542 (1979).  Moreover, the SCDMH Double Bunking Policy clearly indicates that double bunking is only used to address overcrowding, as SCDMH does not control the number of individuals committed to the program.  SCDMH Double Bunking Policy.  When double bunking becomes necessary, SCDMH policy establishes a procedure for making cell placement assignments in accordance with the administrative aims of the SVPTP.  Id. (listing factors considered in making double bunking decisions, including infectious concerns, individual behavioral management issues, participation and treatment progress, time in the program, and physical limitations).  On the basis of this evidence, the court finds that plaintiff's constitutional rights were not harmed by the use of double bunking in the SVPTP.

### C. Maintenance and Sanitation

Plaintiff's objections and the accompanying declarations describe a litany of problems with the BRCI facilities. Pl.'s Objections 3; Christian Dec. ¶ 3; Ridley Dec. ¶¶ 3, 4. However, as the R&R observed, defendants have provided evidence that the SCDC and the SCDMH have implemented numerous practices and procedures to ensure that BRCI facilities remain clean and in working condition. Stevenson Aff. ¶¶ 10 (explaining weekly inspections of BRCI facilities and reports to the Environmental Health and Safety Officer on leaks, wear and tear, faulty wiring, and HVAC issues); Scaturo Aff. ¶ 16 (explaining that maintenance issues are reported to the BRCI Maintenance Work Order System); ECF No. 40-10, Prince Aff. ¶ 3–5 (explaining that laundry area, showers, milieu, food carts, stairs, chairs, microwaves, computer areas, and sally port are cleaned daily, other areas of SVPTP housing units are cleaned periodically, and internal duct work is cleaned biannually by vacuum). Such efforts evince an exercise of professional judgment, and an absence of deliberate indifference, on the part of the relevant defendants. Moreover, plaintiff fails to explain how he, or any other SVPTP detainee, has ever been harmed by the conditions he describes. Therefore, the court finds that Christian's maintenance and sanitation claims must fail.

### D. Food Safety

Plaintiff next argues the food served to SVPTP detainees is unsafe because it is regularly contaminated with razor blades, bugs, or bodily excrement. Pl.'s Objection 2; Christan Dec. ¶ 3B (stating that "food[] still is being contaminated prior to being brought to the SVPTP," and noting incidents occurring on February 8, 2016,

and July 18, 2016). Plaintiff further contends that the defendants have been made aware of this problem, but have failed to solve it. Am. Compl. ¶ 13; Ridley Dec. ¶ 13. As noted in the R&R, defendants have provided evidence of certain SCDC and SCDMH policies which appear designed to address this problem. Stevenson Aff. ¶¶ 9 (explaining that SCDC food service supervisor monitors food preparation and, once prepared, food trays are locked in a hot box and delivered to SVPTP staff); Poholchuk Aff. ¶¶ 8, 10–13 (explaining that BRCI nutrition staff attempts to ensure food is served free from contaminants, SVPTP committees are asked to report food contamination, and minor incidents of food contamination are remedied by replacing the food, while major incidents trigger a nutrition staff investigation).

Plaintiff's food safety claims are almost identical to the claims addressed by another court in this district in <u>Haggwood</u>, 2016 WL 4149986, at *3. In that case, plaintiff Jerome Haggwood ("Haggwood") brought claims against the same defendants involved here, alleging "all [such] [d]efendants [were] aware of [the] food being contaminated and or disrespected by [i]nmates and/or [t]hird parties as yet unkown," but "allowed this condition to exist and continue." No. 5:15-cv-3271, ECF No. 1, Haggwood Compl. ¶ 8. The defendants moved for summary judgment and provided supporting affidavits quite similar to the ones provided in this case. <u>See</u> No. 5:15-cv-3271, ECF Nos. 27-2, 28-4 (affidavits of Stevenson and Poholchuck discussing SCDC and SCDMH food safety policies). The magistrate judge in <u>Haggwood</u> granted the defendants' motion for summary judgment and Haggwood objected, providing declarations that were also quite similar to those provided in this

case.  See No. 5:15-cv-3271, ECF Nos. 65-2 (declarations of Richard Riley and Larry Hendricks).

The <u>Haggwood</u> court, relying upon the Fourth Circuit's decision in <u>Brown v. Brock</u>, 632 F. App'x 774 (4th Cir. 2015), observed that "allegations of unsanitary food service facilities are sufficient to state a cognizable constitutional claim, so long as the deprivation is serious and the defendant is deliberately indifferent to the need." <u>Haggwood</u>, 2016 WL 4149986, at *3 (quoting <u>Brown</u>, 632 F. App'x at 747).  While

> [a] single incident of finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected[,] evidence of frequent or regular injurious incidents of foreign objects in food raises what otherwise might be merely isolated negligent behavior to the level of a constitutional violation.

<u>Id.</u> (quoting <u>Brown</u>, 632 F. App'x at 747).  Applying this rule to the instant case, the court unsurprisingly finds that plaintiff has provided sufficient evidentiary support for his food contamination claim to create a genuine issue of fact as to whether he has suffered a constitutional deprivation.

To hold the defendants liable in their individual capacities, plaintiff must show that they were somehow personally involved in the constitutional deprivation. <u>Wright v. Collins</u>, 766 F.2d 841, 850 (4th Cir. 1985).  Again, the court finds occasion to follow the reasoning outlined in <u>Haggwood</u>, which recognized that a prison official's "[n]otice of a continuing problem" was sufficient to establish personal involvement where the prison official possessed the power to remedy the problem. <u>Haggwood</u>, 2016 WL 4149986, at *4.  The court found Stevenson, Magill and Scaturo's respective positions as warden of BRCI, director of SCDMH, and director of SVPTP established a presumption of "'broad authority' over the operations of [the] prison's kitchens," <u>id.</u> at *4 (quoting <u>Wright</u>, 766 F.2d at 850), and held that the

plaintiff had made out "a prima facie case of personal involvement sufficient to preclude summary judgment" as to those defendants.  Id.  Meanwhile, Poholchuck's position as "program coordinator" did not give rise to such a presumption.  Id.  The court finds no reason to depart from the Haggwood court's holding in this case.

Defendants argue that, even if they did violate plaintiff's constitutional rights, they are nevertheless protected by the doctrine of qualified immunity.  ECF No. 40 at 24–27.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity applies unless the plaintiff shows:  (i) the violation of a constitutional right; and (ii) that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Id. at 232.  "In determining whether the right violated was 'clearly established,' [the court must] define the right 'in light of the specific context of the case, not as a broad general proposition.'"  Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "If the right was not 'clearly established' in the 'specific context of the case'—that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted'—then the law affords immunity from suit.'"  Id. (quoting Clem v. Corbeau, 284 F.3d 543, 549 (4th Cir. 2002)).  Nevertheless, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question

has [not] previously been held unlawful.'" <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).

The court has no trouble finding that plaintiff's right to safe food was clearly established at the time of the alleged deprivation. Courts have long recognized that a prisoner's right to "humane conditions of confinement" includes a right to "receive adequate food," and the prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526–27 (1984)). Plaintiff, as a civil detainee, has at least as much right to humane conditions of confinement as a prisoner. <u>Youngberg</u>, 457 U.S. at 321–22. Any reasonable officer would certainly have recognized that allowing SVPTP detainees to be repeatedly provided with food containing razor blades, bugs, or human excrement was a violation of the detainees' rights to adequate food and safety. Thus, the court finds that defendants are not entitled to qualified immunity on plaintiff's food safety claim.

Thus, plaintiff has sufficiently established a genuine issue of material fact as to Stevenson, Magill, and Scaturo's individual liability. However, the question of damages is another matter. The court finds that, like the plaintiff in <u>Haggwood</u>, plaintiff has failed to show that he was personally damaged by any incident of food contamination and, consequently, plaintiff is not entitled to compensatory damages on his food safety claims. <u>See</u> <u>Haggwood</u>, 2016 WL 4149986, at *4 ("To claim compensatory damages, Plaintiff must show that he was in fact damaged. Plaintiff fails to do so. Plaintiff alleges no harm to himself whatsoever from contaminated

food.").  The court also follows <u>Haggwood</u> in holding that plaintiff may still pursue

his individual capacity claims for nominal and punitive damages.  <u>Id.</u>

To the extent plaintiff brings his claims against defendants in their official

capacities, he must show that his rights were infringed pursuant to the State's "policy

or custom."  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) ("[I]n an official-

capacity suit the entity's 'policy or custom' must have played a part in the violation

of federal law." (quoting <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436

U.S. 658, 694 (1978))).  The court finds this requirement is satisfied, for the purposes

of the instant motion, by the evidence indicating that there were repeated incidents of

food contamination.  <u>See</u> Christian Dec. ¶ 3B (stating that food "still is being

contaminated" and noting two incidents); Riley Dec. ¶ 13 (noting "several" incidents

of finding razor blades in food trays and stating that declarant made "numerous"

complaints about this issue to Magill, Scaturo, and others).  The fact that these

incidents continue to occur suggests they are linked to a flaw in the relevant policies

and procedures.  While the Eleventh Amendment bars any award of damages on

plaintiff's official capacity claims, plaintiff may pursue injunctive and declaratory

relief if he can establish "a substantial likelihood of harm in the future."  <u>Haggwood</u>,

2016 WL 4149986, at *4.  Because plaintiff's evidence suggests that SCDC and

SCDMH policies have been insufficient to prevent incidents of food contamination to

this point, the court finds that plaintiff has satisfied his burden on summary judgment

for this requirement as well.  Therefore, the court finds that plaintiff may pursue his

official capacity claims against Stevenson, Magill, and Scaturo.

Before turning to plaintiff's final claim, the court wishes to echo <u>Haggwood</u> one last time.  While the court finds that summary judgment is inappropriate on the current record, it nevertheless recognizes defendants have provided some evidence of their efforts to prevent food contamination in the SVPTP.  Stevenson Aff. ¶¶ 9 (explaining that SCDC food service supervisor monitors food preparation and, once prepared, food trays are locked in a hot box and delivered to SVPTP staff); Poholchuk Aff. ¶¶ 8, 10–13 (explaining that BRCI nutrition staff attempts to ensure food is served free from contaminants, SVPTP committees are asked to report food contamination, and minor incidents of food contamination are remedied by replacing the food, while major incidents trigger a nutrition staff investigation).  The problem is this evidence does not provide the amount of detail needed to fully evaluate plaintiff's conditions of confinement and defendants' response thereto.  If the evidence more firmly established the nature and frequency of food contamination incidents, and specifically identified the actions taken in response to such incidents, defendants may be entitled to summary judgment after all.  As it stands, however, the record simply shows that defendants have in place certain policies and procedures that have apparently failed to prevent food contamination incidents.  Therefore, like the <u>Haggwood</u> court, this court will allow defendants to renew their motions for summary judgment with supplemental briefing and additional evidence addressing "the nature and number of complaints received regarding food contamination before remedial action, remedial action taken in response to those complaints, and the nature and number of complaints received regarding food contamination received since remedial action was taken."  <u>Haggwood</u>, 2016 WL 4149986, at *5.

### E.    Pre-Hearing Disciplinary Action

Plaintiff last claims he was subjected to punishment prior to any disciplinary hearing.  Specifically, plaintiff alleges he was confined to his cell without a hearing "on or about August 7, 2015," due to his violation of SVPTP phone policy that occurred the same day.  Am. Compl. ¶ 5.  The evidence does indicate that plaintiff was placed on "TRR"—which appears to be shorthand for "therapeutic room restriction"—in connection with an August 7, 2015, disciplinary incident, prior to related disciplinary hearings on August 14, 2015, and August 19, 2015.[4]  ECF No. 40-4, Helff Aff., Ex. B at 3, 4 (memorandum dated August 14, 2015, stating that plaintiff could be removed from "TRR," and memorandum dated August 19, 2015, stating plaintiff was given "TRR time served" as a result of his actions).[5]

It is well established "that inmates retain rights under the Due Process Clause."  Brown v. Braxton, 373 F.3d 501, 504 (4th Cir. 2004).  Generally, these include a right to "some kind of hearing" before the inmate is substantially deprived of his or her liberty.  Wolff v. McDonnell, 418 U.S. 539, 558 (1974).  However, a prior hearing is not required every time a prisoner is subject to an increased level of confinement.  In certain instances, pre-hearing confinement may be justified by non-punitive interests.  See Vice v. Harvey, 458 F. Supp. 1031, 1036 (D.S.C. 1978) (recognizing certain interests, such as safety or risk of escape, might justify pre-hearing confinement, resulting in a "'sliding scale' of due process," whereby courts

---

[4] There is also some mention of an August 12, 2016 hearing, but there is no indication that the decision to place plaintiff on TRR was made, or addressed, at that time.

[5] The court notes that it need not rely on plaintiff's own untimely declaration to find such evidence, though the declaration also supports this version of events.

attempt to "fit the procedural safeguards required to the deprivation imposed"). Because inmates are necessarily "subject to restrictions imposed by the nature of the regime to which they have been lawfully committed," non-punitive interests such as safety or risk of escape may justify their increased confinement regardless of their guilt or innocence in some matter of prison discipline. Wolff, 418 U.S. at 556. Moreover, the Supreme Court has approved of punitive confinement without a prior hearing in cases where the conditions of such confinement did not impose an atypical or significant deprivation of the inmate's liberty. Sandin v. Conner, 515 U.S. 472, 485–87 (1995). Thus, determining whether the Due Process Clause mandates a pre-confinement hearing is necessarily a fact-specific inquiry.

Here, the record provides very little information on the relevant TRR policies and procedures, or the rationale underlying them. Though defendants have provided some general information about the SVPTP disciplinary process, they have not explained the policies and procedures governing TRR, specifically, or how those policies and procedures relate to the goals of SVPTP commitment or the demands of SVPTP administration. The R&R did not specifically address this claim either.[6] R&R at 10. Thus, it is unclear whether plaintiff's TRR confinement was justified as a reasonable exercise of professional judgment.

---

[6] The court notes that this does not appear to have been an oversight on the part of the magistrate judge, but rather a determination that plaintiff's allegations on this issue failed to state a plausible claim for relief, or failed to allege the personal participation of a named defendant. R&R at 10 ("To the extent Christian is attempting to assert any other claims not specifically addressed above, his Complaint fails to state a plausible claim for relief. Additionally, any claims alleged by Christian that fail to specifically allege personal participation by a named defendant also should be dismissed.").

What is clear, however, is that plaintiff has failed to proffer evidence that any of the named defendants were personally involved in the decision to place him under TRR following the August 7, 2015 incident.[7]  As noted above, "[s]uits against government agents in their personal capacities 'cannot succeed absent proof of some degree of personal involvement in the alleged deprivation of rights.'"  Harrison v. Prince William Cty. Police Dep't, 640 F. Supp. 2d 688, 711 (E.D. Va. 2009) (quoting McDonald v. Dunning, 760 F. Supp. 1156, 1160 (E.D. Va. 1991)).  In certain instances, supervisors—such a Stevenson, Magill, and Scaturo—can be held liable under § 1983 when

> (1) [] the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) [] the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) [] there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).  Nothing of the sort has been shown here.  Thus, plaintiff's due process claims regarding the August 7, 2015 disciplinary incident must fail to the extent they are being brought against defendants in their individual capacities.

---

[7] Indeed, plaintiff's amended complaint does not even allege any personal involvement on the part of the named defendants.  Am. Compl. ¶ 5.  Though plaintiff's initial complaint indicated that his pre-hearing confinement was "directed" by Poholchuk, Compl. ¶ 5, plaintiff appears to recognize that his amended complaint superseded the original complaint.  Am. Compl. at 1 (describing amended complaint as his "full" complaint).  Even if the court were to somehow construe both complaints as a single pleading, it is unclear whether plaintiff's use of the word "direction" simply refers to Poholchuk's supervisory authority as program coordinator or actual personal involvement.  Compl. ¶ 5.  Finally, and most importantly, even if the court were to find that plaintiff alleged Poholchuk's personal involvement, there is no evidence in the record supporting that allegation.

To the extent plaintiff brings his claims against defendants in their official capacities, he must show that his rights were infringed pursuant to some State "policy or custom." See Graham, 473 U.S. at 166 ("[I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." (quoting Monell, 436 U.S. at 694).  As discussed above, the record does not contain any indication of what the TRR policy actually provides.  The very fact that plaintiff was placed on TRR prior to his disciplinary hearings strongly suggests that the relevant policies permit such placement.[8]  Helff Aff., Ex. B at 3, 4 (memorandum dated August 14, 2015, stating that plaintiff could be removed from "TRR," and memorandum dated August 19, 2015, stating plaintiff given "TRR time served").  Beyond that, the record simply indicates that it involves some form of cell confinement, suggesting it is somehow punitive.  Christian Dec. ¶ 1.  This evidence is at least enough to create a genuine issue of material fact as to whether SVPTP disciplinary policies allow for pre-hearing punishment through TRR.

Again, plaintiff cannot pursue damages through an official capacity claim, but he is entitled to injunctive and declaratory relief to the extent he can establish "a substantial likelihood of harm in the future." Haggwood, 2016 WL 4149986, at *4.  Given that plaintiff is indefinitely confined in the SVPTP, the court believes it is reasonable to expect that he will face the prospect of SVPTP disciplinary action at some point in the future.  Thus, the court finds that plaintiff has standing to pursue his pre-hearing punishment claim against the defendants in their official capacities.

---

[8] Defendants have provided no evidence that plaintiff's pre-hearing TRR confinement was a misapplication of the relevant policies and procedures.

As with plaintiff's food safety claims, the court does not wish to foreclose the possibility of resolving this issue on summary judgment. The court is simply unable to do so on the current record. Therefore, the court will allow defendants to renew their motions for summary judgment with supplemental briefing and additional evidence addressing the pre-hearing TRR issue as well. These submissions should explain the nature and purposes of the TRR policy, as well as the procedures by which it is applied.

## IV.   CONCLUSION

For the foregoing reasons, the court **ADOPTS** the R&R in part and **REJECTS** the R&R in part. The court **DENIES WITHOUT PREJUDICE** defendants' motions for summary judgment as to plaintiff's food contamination claims against defendants Stevenson, Magill, and Scaturo in their individual and official capacities, and plaintiff's pre-hearing punishment claims against all defendants in their official capacities. The court **REMANDS** all such claims to the magistrate judge. The court **GRANTS** defendants' motions for summary judgment as to all other claims.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

September 19, 2016
Charleston, South Carolina

21